UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JEANETTE FELICIANO,

Plaintiff,

-against-

CITY OF NEW YORK; Police Officer JERARD
SELETSKI, (Shield No. 24646); and JOHN and JANE
DOE 1 through 10, individually and in their official
capacities (the names John and Jane Doe being fictitious,
as the true names are presently unknown),

Defendants.

------------------------------------------------------------------------x

**COMPLAINT**

Jury Trial Demanded

ECF Case

     Plaintiff, Jeanette Feliciano, by her attorney Katherine E. Smith, complaining of the defendants, respectfully alleges as follows:

## NATURE OF THE ACTION

    1.    Plaintiff brings this action for compensatory damages, punitive damages and attorneys' fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 for violations of their civil rights, by defendants THE CITY OF NEW YORK, Police Officer SELETSKI, and P.O.s "JOHN and JANE DOE" #1-10 (collectively "Municipal Defendants"), as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

## JURISDICTION AND VENUE

    2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the Constitution of the United States.

    3.    The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

**JURY DEMAND**

5.      Plaintiff demands a trial by jury in this action.

**PARTIES**

6.      Plaintiff Jeanette Feliciano ("plaintiff" or "Ms. Feliciano") is a resident of Kings County in the City and State of New York.

7.      Defendant City of New York ("City") is a municipal corporation organized under the laws of the State of New York.

8.      Defendant City, maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of defendant City. The NYPD is responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

9.      Defendant Police Officer JERARD SELETSKI, (Shield No. 24646), ("SELETSKI"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant SELETSKI is sued in his individual and official capacities.

10.     At all times relevant defendants John and Jane Doe 1 through 10 were police officers, detectives or supervisors employed by the NYPD.  Plaintiff does not know the real names and shield numbers of defendants John and Jane Doe 1 through 10.

11.     At all times hereinafter mentioned, the Municipal Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the

official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

12.     Each and all of the acts of the Municipal Defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

13.     Each and all of the acts of the Municipal Defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

## STATEMENT OF FACTS

14.     At approximately 10:46 p.m. on September 18, 2013, plaintiff was lawfully within 66 Clay Street, Brooklyn, NY.

15.     Plaintiff was visiting her friend Jose.

16.     Plaintiff was leaving Jose's residence when several New York City Police Officers including defendant SELETSKI approached plaintiff.

17.     The officers asked plaintiff what she was doing.  Plaintiff explained that he was visiting Jose.

18.     The officers confirmed with Jose that plaintiff was in fact visiting him.

19.     Despite the fact that the officers had no probable cause to believe that plaintiff had committed any crimes or offenses, defendants including SELETSKI placed plaintiff under arrest for trespassing.

20.     The officers threw plaintiff against a wall and used excessive force to handcuff her.

21.     Plaintiff complained to the offices that the handcuffs were too tight, but the offices refused to loosen them.

22.     The officers then transported plaintiff to a police precinct.

23.     At the precinct, the officers, including defendant SELETSK, informed employees from the Kings County District Attorney's Office that they observed plaintiff trespassing.

24.     At no time did the officers observe plaintiff commit any crimes or offenses.

25.     From the precinct plaintiff was transported to Central Booking.

26.     Plaintiff was subsequently arraigned in Kings County Criminal Court and her criminal case was assigned document number 2013KN072071.

27.     Plaintiff was released after spending approximately twenty-four (24) hours in custody.

28.     Plaintiff's case was subsequently adjourned in contemplation of dismissal.

29.     Plaintiff suffered damage as a result of defendants' actions.   Plaintiff was deprived of her liberty, suffered emotional distress, mental anguish, fear, pain, bodily injury, anxiety, embarrassment, humiliation, and damage to her reputation.

**FIRST CLAIM**
**42  U.S.C. § 1983  Federal Civil Rights Violations**

30.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

31.     All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of law.

32.     All of the aforementioned acts deprived plaintiff Lin of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and

Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §1983.

33.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all the actual and/or apparent authority attendant thereto.

34.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

35.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of his/her respective municipality/authority, which is forbidden by the Constitution of the United States.

## SECOND CLAIM
### False Arrest

36.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

37.     Defendants violated the Fourth and Fourteenth Amendments because they arrested plaintiffs without probable cause, privilege or consent.

38.      As a direct and proximate result of this unlawful conduct, plaintiff's liberty was restricted for an extended period of time, she was put in fear for her safety, humiliated and subjected to handcuffing, and other physical restraints, without probable cause, in addition to the damages hereinbefore alleged.

**THIRD CLAIM**
**Unreasonable Force**

56.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

57.     The defendants violated the Fourth and Fourteenth Amendments because they used unreasonable force on plaintiff.

58.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**FOURTH CLAIM**
**Denial Of Constitutional Right To Fair Trial**

59.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

60.     The individual defendants created false evidence against Plaintiff.

61.     The individual defendants forwarded false evidence to prosecutors in the Kings County District Attorney's office.

62.     In creating false evidence against Plaintiff, and in forwarding false information to prosecutors, the individual defendants violated Plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

63.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**FIFTH CLAIM**
**Malicious Abuse of Process**

64.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

65.     The individual defendants issued legal process to place plaintiff under arrest.

66.     The individual defendants arrested plaintiffs in order to obtain collateral objectives outside the legitimate ends of the legal process.

67.     The individual defendants acted with intent to do harm to plaintiff without excuse or justification.

68.     As a direct and proximate result of this unlawful conduct, plaintiff sustained, *inter alia*, loss of liberty, loss of earnings, emotional distress, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and deprivation of her constitutional rights, in addition to the damages hereinbefore alleged.

### SIXTH CLAIM
**Failure To Intervene**

69.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

70.     Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

71.     Accordingly, the defendants who failed to intervene violated the First, Fourth, Fifth And Fourteenth Amendments.

72.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### SEVENTH CLAIM
**Monell Claim**

73.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

74.     The City of New York directly caused the constitutional violations suffered by Plaintiff.

75.     Upon information and belief, the City of New York, at all relevant times herein, was aware from notices of claim, lawsuits, complaints filed with the City, and from the City's own observations, that many of its police officers, including the individual defendants, are unfit officers who have the propensity to commit the acts alleged herein.   Nevertheless, the City of New York exercised deliberate indifference by failing to take remedial action.   The City failed to properly train, retrain, supervise, discipline, and monitor the officers and improperly retained and utilized them.   Moreover, upon information and belief, the City of New York failed to adequately investigate prior complaints filed against the officers.

76.     Moreover, the City of New York has implemented and continues to conduct, enforce, and sanction an unlawful vertical patrol and trespass arrest policy which has resulted in a pattern and practice of illegal stops, seizures, questioning, searches, and false arrests of authorized visitors to NYCHA residences.

77.     The NYPD first implemented vertical patrols in 1991.   The protocol was adopted to address crime, and specifically drug activity, in NYCHA residences.   It is considered an "important component of the [NYPD]'s drug control strategy."  (NYPD Patrol Guide Procedure 212-59).

78.     In the course of a vertical patrol, multiple NYPD officers approach anyone they observe in the common areas of a building to affirmatively establish a connection to a specific building resident.   If an individual stopped and seized pursuant to a vertical patrol fails to identify himself to the satisfaction of the officer, or is unable to demonstrate to the satisfaction of the officer, that he or she is going to, or coming from, a visit to a specific resident or his or her

own home, he or she is arrested for trespass.  If the individual has not already been searched for contraband pursuant to the seizure, they are subjected to a search for contraband pursuant to their arrest.

79.     The NYPD's policy amounts to a roving pedestrian checkpoint wherein NYPD officers indiscriminately stop, seize, question, and even search individuals in the common areas of NYCHA residences in the absence of individualized objective facts.

80.     In 2005, the NYPD Housing Bureau alone conducted approximately 181,000 vertical patrols in NYCHA residences, and an average of 142,000 annually over the previous six years.  *Testimony of Chief Joanne Jaffe, NYPD Housing Bureau*, New York City Council Committee on Public Safety and Subcommittee on Public Housing (November 2, 2006) at 24. These figures underestimate the actual number of vertical patrols, however, since NYPD officers outside of the Housing Bureau also patrol NYCHA residences, also conduct vertical patrols in NYCHA residences, and also arrest people for trespass in NYCHA residences.

81.     In addition to directed or organized vertical sweeps in NYCHA residences, NYPD officers also sweep NYCHA residences for alleged trespassers on an informal basis.

82.     Trespassing in public housing is a Class B misdemeanor under subsection (e) of NYPL Section 140.10, which was enacted in 1992, shortly after the inception of the vertical patrol program (L. 1992 ch. 434).

83.     The number of trespass arrests in NYCHA residences has surged.  The City has not provided any legitimate and neutral explanation for this rise in the arrest rate.

84.     The NYPD Patrol Guide on vertical patrol provides NYPD officers no guidance on who is to be stopped, seized, questioned, searched or arrested for trespass.  It simply directs uniformed patrol officers to "take note of unauthorized persons remaining in lobbies, basements,

staircases and roof landings and take appropriate police action when necessary."  (NYPD Patrol Guide 212-60).  Yet the vertical patrol provision contains no criteria for determining who is - and who is not - an "unauthorized person."

85.     The vertical patrol policy and trespass arrest practices implemented by NYPD officers fails to require that an arresting officer act upon observed behavior that reliably differentiates a suspected trespasser or "unauthorized person" in a NYCHA hallway from a lawful visitor in transit or a building resident enjoying the common areas of his home.  Given the large number of people legally permitted in a NYCHA residence, a police officer who is unfamiliar with the building residents and visitors cannot consistently or reliably differentiate between a suspected trespasser and a building resident enjoying the common areas of his home. Given the large number of people legally permitted in a NYCHA residence, a police officer who is unfamiliar with building residents and visitors cannot consistently or reliable differentiate between a suspected trespasser and a building resident, visitor, permittee, or licensee based on this policy.

86.     Defendant's failure to provide adequate guidance, training, and support to NYPD officers regarding how to conduct vertical patrols, including whom to stop, question, seize, search, and arrest for trespass results in a *de facto* roving checkpoint and a pattern and practice of unlawful stops and seizures.

87.     The only guiding principles provided to NYPD officers are consistent with, and reflective of, a policy, practice and custom of reckless arrests based on less than probable cause.

88.     Under this policy, as written, people are or can be arrested for trying to visit someone who is not at home based solely on their mere presence in or around a NYCHA residence.  People are also arrested in instances in which they know only their friend's first name

or "street" name, or only know the apartment by the location rather than the number.  Individuals who remain silent upon questioning for trespass by NYPD officers are subject to arrest.  This is even true if the only basis for the NYPD's questioning is the presence of that individual in a NYCHA common area.

89.     Defendant's vertical patrol policy and trespass arrest practices, even if diligently followed, cause a pattern and practice of false arrests of many people who are lawfully on the premises.  Without probable cause to suspect criminal activity, the individual is forced to defeat a presumption of guilt with the presentation of documents or witnesses at the time of arrest.

90.     In addition to screening for suspected trespassers, another purported purpose of the vertical patrol program and trespass arrest practices is to screen and police NYCHA residents themselves.  According to Inspector Michael C. Phipps, Commanding Officer, Housing Bureau Manhattan, the NYPD has the authority to arrest building residents and charge them with second degree trespass for entering certain areas of their own building, "namely, the roof landings, the rooftops, the store rooms, maintenance areas and basements."  Testimony of Insp. Michael C. Phipps, New York City Council Committee on Public Housing (April 29, 2004) at 24 (Phipps Testimony).  Inspector Phipps testified that "[w]hen tenants sign lease agreements with the Housing Authority, they are advised not to enter" these areas in their buildings.  *Id.*

91.     In fact, NYCHA leases do not contain any such clause.  A NYCHA lease merely provides that, when given proper notice, tenants must comply with all lawful rules and regulations promulgated by the Landlord.  For example, signs posted in or around lobbies of NYCHA residences, if any, may state "No Trespassing" or "Loitering and trespassing in lobby, roof, hallway and stairs is not permitted.  Violators are subject to arrest and prosecution by the Police Department."

92.     Trespassing is an offense which requires that a person unlawfully enter or remain in a prohibited area.  There is no law prohibiting a resident's mere presence in or around the stairwells, hallways, roofs, or roof landings in his or her own apartment building.  Indeed, there could be no lawful regulation or notice provision prohibiting entirely a resident's mere presence in his or her own hallway or stairwell.

93.     Loitering also requires a specified unlawful purpose for being present at a location, such as "begging," P.L. section 240.35(1); gambling, P.L. section 240.35(2); sexual conduct, P.L. section 240.35(3); possessing a controlled substance, P.L. section 240.36; or engaging in prostitution, P.L. section 240.37.

94.     Thus, there is no legal basis for wholesale stopping. seizing, questioning, searching and arresting individuals for mere presence in lobbies, roofs, hallways, and stairwells in and around NYCHA residences.  Yet defendant has enforced, promoted, encouraged and sanctioned these customs and practices.

95.     The City has failed to supervise and discipline NYPD officers who unlawfully stop, question, seize, search, and arrest individuals for trespass.  On information and belief, Defendant does not monitor improper stops, seizures, and searches for trespass.  Nor has the Defendant instituted any follow up procedure or disciplinary action when charges are dismissed or where it is otherwise established that an individual was arrested without probable cause.

96.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.


DATED:        January 17, 2014

New York, New York


_____/s/_____
Katherine E. Smith
299 Broadway, Ste. 1501
New York, NY 10007
ksmith@legalsmithny.com
212-285-1980

*Attorney for plaintiff*